IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SAMIE GILANI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-03288 |
| | ) | |
| RINA BITTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendants'[1] Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim. (Doc. 6).

### I.      BACKGROUND

Plaintiff Samie Gilani ("Gilani") is a United States citizen who submitted an I-130 visa petition for his wife, Rabiya Chauhan, a citizen of Pakistan. (Doc. 1 at ¶¶ 1, 8, 11). Gilani filed the petition with the United States Citizenship and Immigration Services ("USCIS") in November 2021. (*Id.* at ¶ 2). On August 22, 2022, USCIS approved Gilani's wife's visa petition and sent the case to the National Visa Center ("NVC"), a part of the U.S. Department of State for visa processing. (*Id.* at ¶¶ 19-21). In January 2023, the NVC notified Gilani that his case was "Documentarily Qualified," meaning that all necessary documents had been submitted and the visa petition was pending to be scheduled for an

---

[1] The Defendants are: Rena Bitter, Assistant Secretary for the Bureau of Consular Affairs; the U.S. Embassy in Pakistan; and Anthony Blinken, the United States Secretary of State.

interview. (*Id.* at ¶ 22). Since that time, the Department of State has not conducted Chauhan's interview. (*Id.* at ¶ 24).

On September 29, 2023, Gilani filed a three-count Complaint against Defendants based on a delay in processing his wife's visa petition. In Count I, Gilani alleges the procedure used to process his wife's visa application violates the Administrative Procedures Act ("APA") based on unreasonable delay. (*Id.* at ¶¶ 25-29). In Count II, Gilani seeks a writ of mandamus based on the same delay. (*Id.* at ¶ 30-36). In Count III, Gilani alleges 's delay violates his Fifth Amendment Due Process rights. (*Id.* at ¶ 37-41).

On December 21, 2023, Defendants filed their Motion to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction. (Doc. 6).  In the Motion, Defendants argue Gilani has failed to demonstrate that there is a mandatory, non-discretionary duty to schedule his wife for an interview, which they argue precludes Gilani from proceeding under the APA. Defendants also argue that Gilani's Complaint should be dismissed because the delay in scheduling his wife's visa interview has not been unreasonable. On January 18, 2024, Gilani filed his Response (Doc. 10), arguing Defendants do have a clear, non-discretionary duty to schedule an interview on the visa petition in a timely manner and that they delay has violated his constitutional rights.

## II.    LEGAL STANDARD

A motion to dismiss under 12(b)(1) asserts that the Court does not have jurisdiction over some or all of the subject matter in the complaint. Fed. R. Civ. P. 12(b)(1). "Motions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case," and "[i]n the context of a motion to dismiss for lack

of subject matter jurisdiction, [the court] accept[s] as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff." *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). However, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Burwell*, 770 F.3d at 588-89. When considering a Rule 12(b)(1) motion where the complaint is formally sufficient but the defendant contends there is in fact no subject-matter jurisdiction, a court can look beyond the complaint and consider evidence submitted by the parties, without converting the motion to one for summary judgment. *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)).

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true, and construing all reasonable inferences in plaintiff's favor. *Christensen*, 483 F.3d at 458. To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving defendants fair notice of the claims. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

III.    ANALYSIS

In its Motion to Dismiss, Defendants contend Counts I and II should be dismissed under Rule 12(b)(1) because this Court lacks subject matter jurisdiction over Gilani's APA claims and request for a writ of mandamus. Specifically, Defendants argue Gilani is not owed a mandatory, non-discretionary duty by Defendants to schedule an interview, thus depriving the Court of subject matter jurisdiction under the APA. Defendant further argue Gilani's due process rights have not been violated because the pendency of Gilani's wife's visa petition is not the deprivation of any Fifth Amendment right. In response, Gilani argues the Court does have subject matter jurisdiction over his APA and mandamus claims and that his due process injury is not the denial of his wife's application, but the deprivation of a final decision within a reasonable time.

A. Jurisdiction

The APA requires that agencies, such as the Department of State, "conclude" matters presented to them "[w]ith due regard for the convenience and necessity of the parties . . . and within a reasonable time." 5 U.S.C. § 555(b). When an agency fails to comply with this requirement, the APA provides for judicial review of an agency decision that is "unreasonably delayed," and instructs courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, the APA prohibits judicial review of agency action if: (1) "statutes preclude judicial review;" or (2) "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)-(2). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542

U.S. 55, 64 (2004) (emphasis in original). An unreasonable delay claim under § 706(1) also requires an agency action that is mandatory because "[a] delay cannot be unreasonable with respect to action that is not required." *Norton*, 542 U.S. at 63 n.1.

Under the Immigration and Nationality Act ("INA"), an alien must obtain a visa before entering and permanently residing in the United States. 8 U.S.C. § 1181(a). The INA created a special visa-application process for aliens sponsored by "immediate relatives" in the United States. 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a). Under this process, the citizen-relative first petitions on behalf of the alien, asking to have the alien classified as an immediate relative. 8 U.S.C. §§ 1151(f), 1154(a)(1). To do this, the United States citizen or lawful permanent resident seeking to sponsor their foreign spouse for an immigrant visa must file a Form I-130 with USCIS, which is under the purview of the DHS. *See* 8 C.F.R. § 204.1(a)(1). If USCIS approves the Form I-130, USCIS sends the form to the NVC, which is under the purview of the Department of State—not the DHS. *See* 8 C.F.R. § 204.2(d)(3). Once the NVC receives all of the required documents, the NVC determines the petition to be "documentarily complete," and the foreign citizen relative can be scheduled for an appointment for an interview to make a visa petition before a consular officer. *See* 22 C.F.R. § 42.67(a)(1), (a)(3). The NVC schedules appointments in the chronological order of the documentarily complete cases. *See* 9 FAM 504.4-6a. The U.S. embassy or consulate determines the availability of an appointment. *See id.*

The Code of Federal Regulations defines "[m]ake or file an application for a visa" as "personally appearing before a consular officer and verifying by oath or affirmation the statements contained on Form DS-230 or Form DS-260 and in all supporting

documents." 22 C.F.R. § 40.1(l). "When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa . . . or . . . discontinue granting the visa." 22 C.F.R. § 42.81. Taken together, these provisions provide that a visa application has not been "properly completed and executed" until an applicant has "personally appear[ed] before a consular officer." 22 C.F.R. § 40.1(l).

Based on this language, Section 42.81 does not impose a duty for the Department of State to conduct a consular interview from a person who has filed a visa petition. Instead, the regulation's duty is expressly limited to after the interview has already taken place. *See* 22 C.F.R. § 42.81.

The cases which Gilani relies on do not support his position that the Department of State has a duty to act on visa petitions. Gilani's cited authority involves delays in processing visa applications. *See Iddir v. INS*, 301 F.3d 492, 500 (7th Cir. 2002) ("The relevant statutes and regulations confirm that the INS did have the duty to adjudicate the appellants' applications in a reasonable period of time."); *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) (noting "[a] consular office is required by law to act on visa applications" which it defined as "when a visa application has been properly completed and executed before a consular officer in accordance with the provision of INA and the implementing regulations, the consular officer shall either issue or refuse the visa."). The remaining cases involve applications for adjustment of status, which involve a completely different application process, or visa applications that had been pending for nearly a decade. *Jianhua Dong v. Chertoff*, 513 F. Supp. 2d 1158 (N.D. Cal. 2007) (adjustment of status);

*Marwah Al Ihsan Al-Gharawy v. U.S. Department of Homeland Security*, 617 F. Supp. 3d 1 (D.D.C. 2022) (immigration visa applications pending for over eight years). Gilani does not point to any controlling authority to support his position that the Department of State has a nondiscretionary duty to schedule a consular interview or issue a ruling on a Petition for Alien Review, as opposed to a visa application.

Instead, several courts in this Circuit have determined that there is no statutory or regulatory authority which sets forth a clear and non-discretionary duty to schedule a visa interview. In *Prince v. Blinken*, 2023 U.S. Dist. LEXIS 155143 (N.D. Ind. Aug. 31, 2023), a U.S. citizen petitioned for a writ of mandamus and brought an APA claim against the U.S. Department of State for an unreasonably delayed adjudication on the immigrant visa petition she filed for her husband in Pakistan. Specifically, the plaintiff and her husband awaited the scheduling of an interview, as Gilani's does here for his wife. *Id*. at *3. The court determined there was not a clear, mandatory duty to schedule visa interviews. *Id*. at *9. "The State Department considers the consular interview as the point at which an application for a visa is made…. and after the interview, the consular officer must issue the visa or refuse the application." *Id*. at *3-4. (internal citations omitted). The court found it significant that the Secretary was responsible for 230 U.S. posts worldwide, and that allocating the resources at a specific post is "a discretionary policy decision that relies on the expertise and judgment of the Secretary and the chief of mission." *Id*. at *8. Thus, because the scheduling of visa petition interviews is a discretionary function of the State Department, the plaintiffs were unable to establish a clear and nondiscretionary duty that required such an interview to be granted by that point. *Id*. at *9.

Similarly, in *Khan v. Bitter*, 2023 U.S. Dist. LEXIS 174014 (N.D. Ill. Sept. 28, 2023), the court likewise held that the consular office does not have a clear duty to schedule a visa interview, so the court lacked jurisdiction to hear the claim under the APA. The court reasoned, "8 U.S.C. § 1202(b) does not create this duty because as a technical matter, regulations consider a 'visa application' to be made or filed only after the interview itself, and the duty [to review and adjudicate the application] is invoked only after the interview." 2023 U.S. Dist. LEXIS 174014, at *9.

In sum, the Department of State does not have a nondiscretionary duty to schedule a consular interview within a specific timeframe. Congress gave the Secretary of State broad discretion to "administ[er] and [] enforce[]" the Immigration and Nationality Act, 8 U.S.C. § 1104, and to "administer, coordinate, and direct the Foreign Service of the United States and the personnel of State." 22 U.S.C. § 2651a. Congress also gave each Chief of Mission to a foreign country broad discretion to oversee U.S. government operations in that country. 22 U.S.C. § 3927. Part of that discretionary function is the ability to schedule interviews for visa applications based on the resources of a particular post.

Therefore, the Court lacks subject matter jurisdiction over the APA claim. 5 U.S.C. § 701(a)(1)-(2). The Court declines to address Defendants' other arguments for dismissing Count I based on a failure to state a claim under Rule 12(b)(6).

**B. Mandamus Act**

Gilani's second claim seeks a writ of mandamus to compel Defendants to adjudicate his wife's visa application. Pursuant to 28 U.S.C. § 1361, "[t]he district courts

shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus relief will be granted if the plaintiff can demonstrate that the three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Iddir*, 301 F.3d at 499. "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *American Hospital Ass'n v. Burwell*, 812 F.3d 183, 189, 421 U.S. App. D.C. 123 (D.C.C. 2016). A district court's "consideration of any mandamus petition starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *Aljabari v. Mayorkas*, 2022 U.S. Dist. LEXIS 103212, 2022 WL 2073047, at *2 (N.D. Ill. June 9, 2022) (internal quotations omitted).

As with the APA, the lack of a mandatory, non-discretionary duty deprives this Court of subject-matter jurisdiction over the mandamus claim. *Burwell*, 812 F.3d at 189. Even if the Court were to find there it has subject matter jurisdiction, Gilani's mandamus action would not pass muster on the next inquiry — whether the delay has been unreasonable. *See Khan*, 2023 U.S. Dist. LEXIS 174014, at *10. The Seventh Circuit has not yet considered mandamus actions in the context of family-based visas but has done so in the context of U-Visas — a separate visa category. In *Calderon-Ramirez v. McCament*, it was uncontested that the relevant U-Visa statute required the U.S. State Department to process applications within a "reasonable period of time." 877 F. 3d 272, 275 (7th Cir. 2017). However, the court found that the plaintiff was unable to "set forth any facts that

differentiate himself from other petitioners waiting ahead of him for adjudication." *Id.* at 275-276. The sequence in which U-Visa applications were processed depended on an applicant's position in the queue, and the Seventh Circuit did not find that the plaintiff's "wait time has been more unreasonable than other petitioners waiting in the same line." *Id.* at 276.

Gilani filed his Complaint in September 2023 – less than two years after filing his visa petition on behalf of his wife in November 2021, and only nine months after being notified that the petition was complete in January 2023. While the Court sympathizes with the hardships Gilani and his wife experience as they await the adjudication of the visa petition, the two years that Gilani has waited for his wife's visa does not come close to the delays that courts have considered unreasonable. *See Sarlak*, 2020 U.S. Dist. LEXIS 101881, 2020 WL 3082018, at *6 ("[D]elays of about two years . . . have been deemed reasonable as a matter of law."); *Ghadami*, 2020 U.S. Dist. LEXIS 47623, 2020 WL 1308376, at *9 ("[T]he Court finds itself constrained not to declare two years to be unreasonable as a matter of law"). Without a congressionally supplied yardstick, some district courts have even reasoned that "immigration delays in excess of five, six, [or] seven years are unreasonable, while those between three to five years are often not unreasonable." *Yavari v. Pompeo*, No. 19-cv-02524, 2019 U.S. Dist. LEXIS 216070, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019). The Court's analysis could change the longer Gilani and his wife wait, but at this point, Gilani's allegations do not allow for a finding of unreasonable delay for purposes of both his APA and mandamus claims. Moreover, the fact that Gilani has not identified any basis to differentiate he and his wife's situation from that of other

applicants who applied before them further underscores the inapplicability of a writ of mandamus. *Calderon-Ramirez*, 877 F.3d at 275-76.

Accordingly, as with Gilani's APA claim, the lack of a mandatory, non-discretionary duty deprives this Court of subject-matter jurisdiction over the mandamus claim. Even if the Court had subject matter jurisdiction, Gilani has not set forth any facts that distinguish his wife's visa application from other applicants who filed before her and are still waiting for their petitions to be processed. Consequently, in light of *Calderon-Ramirez*, the Court is compelled to conclude Gilani has also failed to allege facts sufficient to establish that his wife possesses a right to "skip ahead of other petitioners," thus making a writ of mandamus unwarranted. 877 F.3d at 275.

## C. Constitutional Claims

Gilani's third claim asserts Defendants have violated his substantive and procedural due process rights protected by the Fifth Amendment by failing to adjudicate his wife's visa petition. Defendants argue Gilani has not been deprived of a constitutional right because his wife's visa petition has not been erroneously denied. Gilani fails to address or elaborate on his due process claim in his Response.

### 1. Substantive Due Process

The Supreme Court has interpreted the Due Process Clauses of the Fifth and Fourteenth Amendments "to include a substantive component, which forbids the government to infringe certain fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301-02 (1993). "[N]arrow tailoring is required

only when fundamental rights are involved," whereas "[t]he impairment of a lesser interest ... demands no more than a 'reasonable fit' between governmental purpose ... and the means chosen to advance" it. *Id.* at 305.

Gilani's claim suggests that the right to cohabitate with one's family is an undeniable injury under Article III. But Gilani points to no case law at all, let alone case law binding on this Court, that recognizes a fundamental constitutional right to cohabitate with one's family members *within the United States*. Rather, as the Ninth Circuit has explained, the theory that individuals have "a fundamental right to reside in the United States with [their] non-citizen relatives ... runs headlong into Congress' plenary power over immigration." *Gebhardt v. Nielsen,* 879 F.3d 980, 988 (9th Cir. 2018). Gilani's "generic right to live with family is far removed from the specific right to reside in the United States with non-citizen family members." *Id.*; *see also Alharbi v. Miller,* 368 F. Supp. 3d 527, 570-71 (E.D.N.Y. 2019) (finding that plaintiffs "do not have a fundamental right to have or raise their children in the United States").

Gilani's claim regarding familial unity does not constitute a recognized fundamental right under the U.S. Constitution. While it is understandable that Gilani would like to have his wife's petition processed, he does not have a constitutional right to have his wife's visa petition interview scheduled as quickly as he desires. Additionally, the time taken by USCIS to process Form I-130 petitions, including those filed by Gilani, is directly related to USCIS's obligation to accurately assess visa eligibility while managing public resources. Accordingly, Gilani has not presented a valid cause of action for the infringement of his substantive due process rights.

### 2. Procedural Due Process

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). "To have a property interest in a benefit, a person … must … have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

The Ninth Circuit has found that the "grant of an I-130 petition for immediate relative status is a nondiscretionary decision" and therefore "a right to which citizen applicants are entitled as long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility"—in other words, a "protected interest [that] is entitled to the protections of due process." *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013). Because the timing of the consular interview is a discretionary act, there is no due process violation when the consulate office does not schedule it within the petitioner's desired timeframe. Furthermore, the Supreme Court "long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1964 (2020). As a result, the visa-application procedures cannot violate the Due Process Clause because "[w]hatever the procedure authorized by Congress is, it is due process." *United States ex. Rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).

Even if Gilani has a protected interest in the approval of his wife's Form-130 petition, and assuming he meets the requirements of demonstrating eligibility by a preponderance of the evidence, there is no foundation for his claim that Defendants have denied him of that interest. Gilani's claim is not based on an erroneous denial of his wife's visa petition. Instead, he contends he has been deprived of his statutorily created entitlement to the adjudication of his wife's visa petition. However, Gilani's wife has not been denied adjudication of her visa; her visa petition is still pending and will, following an interview before a consular officer, ultimately be adjudicated. Accordingly, Gilani has failed to sufficiently allege either that he and his wife are entitled to the granting of the visa petition or that the mere pendency of the petition constitutes a deprivation of that benefit.

IV.   **CONCLUSION**

For the forgoing reasons, Defendants' Motion to Dismiss (Doc. 6) is GRANTED. Gilani's Complaint is DISMISSED WITHOUT PREJUDICE.

ENTER: April 26 2024

_____

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE